UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**CALUSA BAY NORTH CONDOMINIUM
ASSOCIATION, INC. AND CALUSA BAY SOUTH
CONDOMINIUM ASSOCIATION, INC.,**

Plaintiffs,

v.                                                    Case No. 2:21-cv-540-JLB-NPM

**EMPIRE INDEMNITY INSURANCE COMPANY,**

Defendant.

---

### ORDER

Before the court is plaintiffs' amended motion to compel appraisal (Doc. 12)

and a joint motion for extension of case management deadlines (Doc. 35). Defendant

Empire Indemnity Insurance Company seeks to avoid appraisal by claiming that

appraisal is a remedy in form of specific performance that must be sufficiently

pleaded and proved. (Doc. 18 at 2-8). This challenge fails because appraisal is not a

remedy. Appraisal is an alternative dispute resolution mechanism. Moreover,

Empire goes a step further and suggests that a court should never order specific

performance of a contract's appraisal provision because a monetary award for any

breach of the contract will always suffice. (Doc. 33 at 4). In sum, Empire's circular

argument (an appraisal may only be compelled by way of a judgment for specific

performance, but such a judgment would never be proper because there's an

adequate remedy at law) seeks to rewrite the bargained-for contract between the parties by essentially striking the appraisal provision altogether. Such an outcome would be entirely improper. Instead, for the reasons discussed below, the motion to compel appraisal is granted, and the joint motion for extension of deadlines is denied as moot.

## I.    Background

This case concerns an insurance dispute for losses allegedly caused by Hurricane Irma on or about September 10, 2017. (Doc. 26 ¶ 7). Plaintiffs Calusa Bay North Condominium Association, Inc. and Calusa Bay South Condominium Association, Inc. (collectively, "Calusa Bay")[1] administer at least 42 buildings in its condominium complex in Collier County, Florida, which were impacted by the storm. (Doc. 26 ¶¶ 2-6, 14; Doc. 26-1 at 11-13, 20-26; Doc. 26-5 at 11-13, 20-27). At the time of the loss, Calusa Bay's buildings were insured by Empire under two insurance policies (for Calusa Bay North and Calusa Bay South). (Doc. 26 ¶¶ 4, 6-7; Doc. 32 ¶ 6).

Both policies contain a unilateral appraisal provision whereby either party may demand that the amount of loss be determined by a three-member panel composed of two competent and impartial appraisers and an umpire. The policies contain the following appraisal provision:

---

[1] For ease, Calusa Bay, collectively, will be referred to as a singular entity.

If we and you:

**B.** Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

> **1.** Pay its chosen appraiser; and

> **2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

(Doc. 26-1 at 51; Doc. 26-5 at 52).

Within roughly three weeks of the storm, Calusa Bay reported the loss to Empire and made claims for policy benefits. Empire assigned claim number 5630011138 to Calusa Bay North and claim number 5630010744 to Calusa Bay South. (Doc. 26 ¶¶ 15-16, 24-25; Doc. 32 ¶¶ 15-16, 24-25). After conducting its investigation of the claims, Empire admitted coverage for the loss caused by the hurricane. (Doc. 26 ¶¶ 10, 17-20, 26-29; Doc. 32 ¶¶ 10, 17-20, 26-29).

## A.    Calusa Bay North

For Calusa Bay North, Empire evaluated the Replacement Cost Value at $3,132,579.73, and issued a check on January 16, 2018, for $2,607,595.33.[2] (Doc. 26-2). On December 18, 2018, Calusa Bay North submitted a sworn proof of loss,

---

[2] This is the sum of the partial payments ($2,056,829.44) and net amount due ($550,765.89). (Doc. 26-2).

requesting payment in the amount of $13,931,783.47 ($14,456,767.87 minus deductibles). (Doc. 18-1). Calusa Bay North then demanded appraisal under the policy on December 19, 2018, February 19, 2019, October 30, 2019, and June 5, 2020. (Doc. 26-4 at 2-9).

On October 27, 2020, Calusa Bay North submitted an updated sworn proof of loss for Replacement Cost Value, requesting a significantly lesser payment in the amount of $8,639,063.17 ($9,164,047.57 minus depreciation and deductibles). (Docs. 18-2, 26-3). Calusa Bay North then demanded appraisal again on November 16, 2020, and April 14, 2021. (Doc. 26-4 at 10-14). Empire has consistently refused to submit the claim to appraisal.

### B.    Calusa Bay South

For Calusa Bay South, Empire evaluated the Replacement Cost Value at $5,096,058.75, and issued a check on January 16, 2018, for $4,211,455.71.[3] (Doc. 26-6). On December 18, 2018, Calusa Bay South submitted a sworn proof of loss, requesting payment in the amount of $22,541,317.33 ($23,425,920.37 minus deductibles). (Doc. 18-3). Calusa Bay South then demanded appraisal under the

---

[3] This is the sum of the partial payments ($3,266,880.01) and net amount due ($944,575.70). (Doc. 26-6).

policy on December 19, 2018, February 19, 2019, October 30, 2019, and June 5, 2020. (Doc. 26-8 at 2-9).

On October 27, 2020, Calusa Bay South submitted an updated sworn proof of loss for Replacement Cost Value, requesting a significantly lesser payment in the amount of $13,755,290.54 ($14,639,893.58 minus depreciation and deductibles). (Docs. 18-4, 26-7). Calusa Bay South then demanded appraisal again on November 16, 2020, and April 14, 2021. (Doc. 26-8 at 10-14). Empire has consistently refused to submit the claim to appraisal.

## II.   Law and Analysis

"Appraisal is a form of alternative dispute resolution that sets a disputed loss amount." *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 F. App'x 189, 193 (11th Cir. 2021) (citing *State Farm Fla. Ins. Co. v. Crispin*, 290 So. 3d 150, 151 (Fla. 5th DCA 2020)); *see also Merrick Preserve Condo. Ass'n, Inc. v. Cypress Prop. & Cas. Ins. Co.*, 315 So. 3d 45, 49 (Fla. 4th DCA 2021) ("Appraisal clauses provide a mechanism for prompt resolution of claims …."). Thus, like an arbitration agreement, an appraisal provision is a stipulation to the forum in which certain areas of dispute should be decided. *See Webb Roofing & Constr., LLC v. Fednat Ins.*, 320 So. 3d 803, 805-806 (Fla. 2d DCA 2021); *accord Fla. Ins. Guar. Ass'n v. Castilla*,

18 So. 3d 703, 704 (Fla. 4th DCA 2009) (reasoning that motions to compel appraisal or arbitration are subject to the same standard of review).

"The appraisers determine the amount of the loss, which includes calculating the cost of repair or replacement of property damaged, and ascertaining how much of the damage was caused by a covered peril as opposed to things such as 'normal wear and tear, dry rot, or various other designated, excluded causes.'" *Citizens Prop. Ins. Corp. v. River Manor Condo. Ass'n*, 125 So. 3d 846, 854 (Fla. 4th DCA 2013) (quoting *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1025 (Fla. 2002)).

Given the "overwhelming preference in Florida for the resolution of conflicts through any extra-judicial means … for which the parties have themselves contracted," resort to the appraisal process is strongly preferred. *McGowan v. First Acceptance Ins. Co.*, Inc., 411 F. Supp. 3d 1293, 1296 (M.D. Fla. 2019) (quoting *State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1201-1202 (Fla. 3d DCA 1995)); *see also Preferred Mut. Ins. Co. v. Martinez*, 643 So. 2d 1101, 1103 (Fla. 3d DCA 1994) (reversing denial of motion to compel appraisal because such motions "should be granted" whenever the insurance policy includes an appraisal provision). Indeed, when an insurance policy contains an appraisal provision, "the right to appraisal is not permissive but is instead mandatory, so once a demand for appraisal is made, 'neither party has the right to deny that demand.'" *McGowan*, 411 F. Supp. 3d at 1296 (quoting *United Cmty. Ins. Co. v. Lewis*, 642 So. 2d 59, 60 (Fla. 3d DCA

1994)).

And so, legions of Florida cases regularly refer amount-of-loss determinations to an appraisal panel by non-dispositive order whenever a party properly invokes the contractual right. *See*, *e.g.*, *Breakwater Commons Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-31-JLB-NPM (M.D. Fla. Feb. 1, 2022) (Doc. 76) (order overruling objections to order compelling appraisal) ("Appraisal is … a non-dispositive matter because it does not dispose of either party's claims or defenses."); *Webb Roofing*, 320 So. 3d at 804-807 (affirming interlocutory order granting insurer's motion to compel appraisal in breach-of-contract suit brought by insured's assignee); *State Farm Fla. Ins. v. Speed Dry, Inc.*, 292 So. 3d 1260, 1262 (Fla. 5th DCA 2020) (reversing order denying insurer's motion to compel appraisal); *State Farm Fla. Ins. Co. v. Sheppard*, 268 So. 3d 1006 (Fla. 1st DCA 2019) (same); *People's Tr. Ins. Co. v. Garcia*, 263 So. 3d 231 (Fla. 3d DCA 2019) (same).[4]

In sum, where "coverage [is] admitted and the only remaining dispute is the amount of the loss ... appraisal is appropriate." *McGowan*, 411 F. Supp. 3d at 1297 (quoting *Gonzalez v. Am. Sec. Ins. Co.*, 2015 WL 12852303, *3-4 (M.D. Fla. Nov. 10, 2015))

---

[4] *See also PB Property Holdings, LLC v. Auto-Owners Insurance Co.*, No. 16-cv-1748-WJM-STV, 2017 WL 7726696, *1 (D. Colo. January 26, 2017) (holding that a magistrate judge's order compelling appraisal is non-dispositive and, therefore, any objections are subject to Federal Rule of Civil Procedure 72(a)).

### A.    Court's authority to compel appraisal

In Florida, where arbitration and appraisal are generally considered distinct mechanisms of alternative dispute resolution, the state's contract law applies. *See* Timothy Law & Jillian Starinovich, *What Is It Worth? A Critical Analysis of Insurance Appraisal*, 13 Conn. Ins. L. J. 291, 300 (2007).

 Florida courts enforce a party's valid invocation of a right to have amount-of-loss issues determined by an appraisal panel because doing so "upholds the terms of the policy" and "conserves the parties' and trial court's resources" by submitting those issues to a more cost efficient and timely alternative to litigation. *People's Tr. Ins. Co. v. Fernandez*, 317 So. 3d 207, 211 (Fla. 3d DCA 2021). Florida courts enforce an appraisal provision in an insurance contract via state contract law because, after all, "appraisals are creatures of contract." *Citizens Prop. Ins. Corp. v. Casar*, 104 So. 3d 384, 385 (Fla. 3d DCA 2013). Whether the amount-of-loss question will be referred to an appraisal panel depends on the provisions of the policy and, absent any ambiguity, plain language is given full force and effect. *See SafePoint Ins. Co. v. Hallet*, 322 So. 3d 204, 207 (Fla. 5th DCA 2021); *Saltponds Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 20-cv-10063-JEM, 2020 WL 6875747, *1 (S.D. Fla. Oct. 26, 2020) (citing *Suarez*, 833 So. 2d at 763); *accord Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013) ("Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy

in accordance with the plain meaning so as to give effect to the policy as written.");

*Fla. Ins. Guar. Ass'n v. Branco,* 148 So. 3d 488, 491 (Fla. 5th DCA 2014) (citing

*Arias v. Affirmative Ins. Co.*, 944 So.2d 1195, 1197 (Fla. 4th DCA 2006) (same)).

Thus, parties cannot avoid their obligation to submit to the appraisal process by

arguing a lack of statutory basis for the court to compel appraisal.

Besides, this court has rejected nearly identical arguments Empire has raised

here (Doc. 18 at 5):

> Even assuming Florida's arbitration code no longer serves as a statutory basis to compel appraisal after Suarez, Empire's own argument belies the notion that courts refused to compel appraisal at common law. Empire cites a portion of *Red Cross Line v. Atlantic Fruit Co.*, wherein the Court observed that courts do not "enforce executory agreements to arbitrate disputes." 264 U.S. 109, 120–21 (1924). Yet in the portion Empire omits, the Court clarifies, "except in those cases where the agreement, leaving the general question of liability to judicial decision, confines the arbitration to determining the amount payable." *Id.* at 121 (emphasis added). It is well established under Florida law that appraisal determines only the amount payable under an insurance policy, not whether there is an obligation to pay that amount. *See Hanover Fire Ins. Co. v. Lewis*, 10 So. 297, 302 (Fla. 1891).

*Breakwater Commons Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-31-JLB-

NPM, Doc. 76 at 8 (M.D. Fla. Feb. 1, 2022). By virtue of its subject matter

jurisdiction over this diversity matter, the court has the inherent authority to refer all

issues in this dispute to mediation, and in that same vein it has the requisite authority

to refer the amount-of-loss issues to an appraisal panel as bargained-for in the

parties' contract.

**B.      Ripeness**

Before referring amount-of-loss issues to an appraisal panel, the court "must make a 'preliminary determination' as to whether a demand for appraisal is ripe." *Castillo at Tiburon Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-468-SPC-MRM, 2021 WL 4438370, *4 (M.D. Fla. Sept. 28, 2021) (citations omitted). A demand for appraisal "is ripe where post-loss conditions are met, 'the insurer has a reasonable opportunity to investigate and adjust the claim,' and there is a disagreement regarding the value of the property or the amount of loss." *Am. Cap. Assurance Corp. v. Leeward Bay at Tarpon Bay Condo. Ass'n, Inc.*, 306 So. 3d 1238, 1240 (Fla. 2d DCA 2020) (quoting *Citizens Prop. Ins. Corp. v. Admiralty House, Inc.*, 66 So. 3d 342, 344 (Fla. 2d DCA 2011)), *review granted*, No. SC20-1766, 2021 WL 416684 (Fla. Feb. 8, 2021).

For the first time in its sur-reply, Empire challenges the ripeness of appraisal. Relying on the pleadings, Empire perfunctorily denies Calusa Bay's assertions that they complied with all post-loss conditions and afforded Empire a reasonable opportunity to investigate and adjust the claim. (Doc. 33 at 1–2).

Some of Empire's affirmative defenses allege Calusa Bay prejudiced its investigation and adjustment of the claim and failed to comply with post loss conditions. Empire alleges this because it claims Calusa Bay's estimate was inflated. Empire claims Calusa Bay failed to "reasonably calculate the amount of loss" or

"rel[ied] on junk science" when calculating its losses. (*See* Doc. 32 (Aff. Defs. 2, 3, 5, 8, 9, 11)). But these allegations are rooted in disagreement over the scope and valuation of the claims. Calusa Bay has complied with all requests by Empire (or such requests have been forfeited), including the following: making the insured property available for inspection; sending a survey to unit owners, even though Calusa Bay was not required to do so under the policies, and providing the results to Empire; providing voluminous documents in support of the claims; providing expert reports, estimates, and invoices to support the amount of the claims; and providing two signed examinations under oath. (Doc. 12 at 7). Empire even issued multi-million-dollar payments for the claims based on its investigation and adjustment of them. (*See* Doc. 26 ¶¶ 10, 17-20, 26-29; Doc. 32 ¶¶ 10, 17, 26; *see also* Docs. 26-2, 26-6).

To the extent any affirmative defense challenges ripeness of appraisal because Empire has not finalized investigating damaged windows and doors, Empire's argument about coverage still being in dispute is unavailing. Empire did not "wholly deny" coverage. *Merrick Preserve Condo. Ass'n, Inc. v. Cypress Prop. & Cas. Ins. Co.*, 315 So. 3d 45, 50 (Fla. 4th DCA 2021) ("[W]here the insurer has not 'wholly denied' coverage, but the parties dispute whether the claimed damage resulted from a covered or uncovered cause, appraisal is appropriate to determine causation."). Calusa Bay North and Calusa Bay South submitted claims (with separate assigned

claim numbers for each plaintiff) for losses caused by the hurricane—to suggest there are separate claims for an itemed list of fixtures is incorrect. (Doc. 26 ¶¶ 15-16, 24-25; Doc. 32 ¶¶ 15-16, 24-25). Accordingly, appraisal is ripe.

### C.    Specific performance

Empire claims the ***only*** method by which Calusa Bay can successfully show entitlement to appraisal is to plead and prove specific performance of the appraisal provision. This is wrong. Appraisal is an extra-judicial means for parties to avoid litigation on the issue of damages and instead have appraisers—who have far more expertise than the court or a jury in appraising property—to determine the amount of loss. *E.g.*, *Fla. Ins. Guar. v. Sill*, 154 So. 3d 422, 424 (Fla. 5th DCA 2014) (quoting *Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d 1226, 1230 (Fla. 3d DCA 2013)). Rather than submitting to an appraisal provision it inserted into its own insurance contract, Empire now attempts to circumvent the appraisal process. And its reasons for doing so have not only multiplied and delayed these proceedings, but are incorrect, misleading, and totally mischaracterizes case law on appraisal.

As previously discussed, "[a]ppraisal is a form of alternative dispute resolution that sets a disputed loss amount." *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 F. App'x 189, 193 (11th Cir. 2021); *Merrick*, 315 So. 3d at 49. Appraisal is ***not*** a remedy. *E.g.*, *Positano Place at Naples II Condo. Ass'n, Inc. v.*

*Empire Indem. Ins. Co.*, No. 2:21-cv-181-SPC-MRM, 2022 WL 714809, *2 (M.D. Fla. Mar. 10, 2022) (hereinafter "*Naples II*").

A remedy at law for a breach of performance is damages, while an equitable remedy <u>for a breach of performance</u> is specific performance. *See generally Sardinas v. Miami Veterinary Specialists, P.A.*, No. 1:20-cv-22987, 2020 WL 7241364, *10 (S.D. Fla. Dec. 8, 2020) (dismissing count for specific performance because it is a remedy and not a freestanding claim and there was an adequate remedy at law as plaintiff also sought money damages for breach of contract). So, a party may obtain a judgment for specific performance as a remedy for a breach of contract when an award of damages would not be inadequate. But in the end, neither party in a breach-of-insurance-policy action wants a "judgment" that refers an amount of loss dispute to an appraisal panel. Instead, an insured wants an enforceable judgment for the benefits due (which may incorporate an appraisal award), and the insurer wants a judgment of no or limited liability. *See generally Naples II*, 2022 WL 714809 at *2 (describing how an order compelling appraisal is not remedial, but rather is a step in the process for the insured to obtain the end goal of monetary damages).

Generally, the "performance" terms in the insurance context are the payment of premiums on one hand and the payment of coverage benefits on the other. Either way, performance centers on money. So specific performance doesn't fit. On a similar note, the court has yet to observe a party bringing suit seeking specific

performance as a remedy to enforce a breach of non-performance terms like a jury waiver or venue or choice-of-law provisions. The same logic applies to alternative-dispute-resolution terms in a contract.

Nevertheless, Calusa Bay filed an amended complaint after Empire filed its response in opposition to the motion to compel appraisal. In an apparent effort to moot Empire's arguments, Calusa Bay added counts for specific performance in addition to their breach of contract and "petition to compel appraisal" counts. (Doc. 26). But Empire was still unsatisfied with the amendments. (Doc. 33). In one of its various arguments, Empire even suggests "[t]here is no indication why this failure [that is, the alleged breach of the appraisal agreement] cannot be compensated with money." (Doc. 33, p. 4). If Empire truly agrees the ultimate prayer for relief is ***monetary*** damages, it is a wonder why Empire has made the circular argument that Calusa Bay must plead and prove specific performance. *Cf. Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-178-SPC-NPM, 2021 WL 1610089, *2 (M.D. Fla. Apr. 26, 2021) (hereinafter "*Naples I*") (observing that "Empire provide[d] no support for its argument [that] this Court can somehow grant equivalent relief [to appraisal] through money damages," and under Empire's theory, an insured "could never invoke the appraisal provision because they could sue for damages instead"); *Positano Place at Naples III Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-183-SPC-NPM, 2021 WL 1610090, *2 (M.D. Fla. Apr. 26,

2021) (hereinafter "*Naples III*") (same); *see also Concord at the Vineyards Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-380-SPC-KCD, 2022 WL 4125041, *1 (M.D. Fla. Aug. 10, 2022) (appraisal is not a remedy in the form of specific performance that may only be obtained by summary judgment or trial).[5]

In either a breach-of-contract action brought by the insured or a declaratory-judgment action brought by the insurer, either the insured or the insurer may simply move to refer all or some of the dispute to arbitration, mediation, or appraisal, depending on the terms of the underlying contract. *See Naples I*, 2021 WL 1610089 at *1 ("[P]arties can seek appraisal through breach of contract and declaratory judgment actions.") (citation omitted). In either context, the "remedy" is the final judgment about any amount due, not the alternative-dispute-resolution mechanism that resolves some of the fact issues along the way.

None of the non-binding cases Empire cites stands for the proposition that a party ***must*** assert a claim for specific performance to compel appraisal—rather these cases suggest parties ***may*** bring such claims. Bottom line, alternative-dispute-resolution mechanisms are neither performance terms of a contract for purposes of any equitable remedy of specific performance, nor are they remedies in and of themselves for ameliorating the consequences of any breach. Thus, Empire's

---

[5] *See also* Concord's response to Empire's objections to the court's August 10, 2022 order referring the amount-of-loss issues to appraisal. Case No. 2:21-CV-380-SPC-KCD, Doc. 58 (collecting cases).

argument that Calusa Bay is not entitled to appraisal until it obtains a favorable summary judgment disposition on a breach of the appraisal provision is without merit. *See Naples II*, No. 2:21-cv-181-SPC-MRM, 2022 WL 714809, *2 (M.D. Fla. Mar. 10, 2022) ("[B]ecause appraisal will not dispose of any claims or defenses, the Court does not treat the motion to compel appraisal as one for summary judgment." (citing *Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-81-FtM-38NPM, 2019 WL 3852731, *2 (M.D. Fla. Aug. 16, 2019) ("Unlike a summary judgment motion, a determination of whether appraisal is appropriate does not determine whether there is a genuine disputed material fact or whether the moving party is entitled to judgment.")); *Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-136-JLB-MRM, 2022 WL 780950, *2 (M.D. Fla. Mar. 15, 2022).[6]

## D.    Form of the appraisal award

A lump-sum appraisal award presenting nothing more than a single figure for the entire 42-building condominium complex would not be appropriate. *Naples II*, No. 2:21-cv-181-SPC-MRM, 2022 WL 714809, *3 (M.D. Fla. Mar. 10, 2022) (finding no plain error in recommendation "that the appraisal panel should issue an

---

[6] While an order referring the amount-of-loss issues to an appraisal panel may moot improper claims in a complaint styled as "petition to compel appraisal" or "specific performance for appraisal," the inclusion of unnecessary claims in a pleading does not affect the court's authority to refer disputed issues to an alternative-dispute-resolution process or to give effect to other non-performance terms (venue, choice-of-law, class-action waiver, jury waiver) in a contract.

award that delineates between the specific coverages offered under the Policy for each unique building"). "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto." Fla. Stat. § 627.419(1). *See also Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (reasoning that each clause in an insurance policy must be read in conjunction with the entire policy); *Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 605 F.3d 1250, 1252 (11th Cir. 2010) ("in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect") (quoting *Anderson*, 756 So. 2d at 34). Thus, the appraisal award must be stated in terms that coincide with the contours of the policy. Here, that means it must present the replacement cost, actual cash value, ordinance or law, debris removal, and other benefit figures for each building, and account for any per-building deductibles. Because no provision of the contract calls for it, the court will not adopt any of Empire's other suggested "safeguards" for the appraisal process.[7]

---

[7] While the court does not adopt any prohibition against ex parte communications with members of the appraisal panel, it would likely inure to the benefit of everyone involved in this action for the parties to forego any substantive communications with any member of the panel ex parte.

### E.    Stay of Discovery

The appraisal process is an informal proceeding. *See Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d 1226, 1229 (Fla. 3rd DCA 2013) (observing the differences between formal arbitrations and informal appraisal proceedings). And as contemplated in the contract, an appraisal may—and should—take place before any litigation and its attendant tools for discovery. But the court's experience in other insurance-coverage matters with appraisal issues has revealed that parties and appraisers sometimes find that the tools of formal discovery can facilitate the appraisal process. Accordingly, a party may, with the concurrence of at least two members of the appraisal panel, seek leave to conduct discovery concerning the amount-of-loss issues referred to the appraisal panel for resolution. All other discovery will be stayed.

## III.    Conclusion

Plaintiff's amended motion to compel appraisal (Doc. 12) is **GRANTED**. The amount-of-loss issues are referred to an appraisal panel for determination. Each party must select a competent and impartial appraiser by **October 21, 2022**. The appraisers may not have served as an adjuster for either party, and their compensation may not be contingent on the outcome of this matter, the outcome of the appraisal, or on any valuations they may make during the appraisal process. In other words, they may only be paid on a flat fee or hourly basis for their service. This comports with the

policy's requirement for "impartial" appraisers. (Doc. 26-1 at 44; Doc 26-5 at 45).

The appraisers must agree to an umpire by **November 4, 2022**, and the parties will contemporaneously file a joint notice identifying the members of the appraisal panel. If the appraisers are unable to agree, then the parties will file a motion by **November 7, 2022**, requesting a court-appointed umpire, and the motion will be set for an in-person hearing during which the parties' appraisers will explain their objections to each other's proposed umpires.

The appraisal process must be completed within **six months from the date the umpire is selected**. Within **one week** after the appraisal concludes, the parties must promptly file a joint notice informing the court of the outcome of the appraisal. The parties' joint motion for extension of all case management deadlines (Doc. 35) is **DENIED as moot**.

**ORDERED** on September 30, 2022.

_Nicholas P. Mizell_

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE